## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **SUNTERRA LOGISTICS LLC** | : | **Case No.** |
| 10250 Alliance Road Suite 209 | | |
| Blue Ash, Ohio 45242, | : | **Judge** |
| | | |
| Plaintiff, | : | |
| | | **VERIFIED COMPLAINT FOR** |
| vs. | : | **TEMPORARY RESTRAINING** |
| | | **ORDER AND PRELIMINARY AND** |
| **NICK MONROE** | : | **PERMANENT INJUNCTIVE RELIEF** |
| 9644 Biddinger Ct. | | **AND DAMAGES** |
| Harrison, Ohio 45030, | : | |
| | | **(Jury Demand Endorsed Hereon)** |
| **KYLE VANFRANK** | : | |
| 516 Wildcat Parkway | | |
| Wiggins, Colorado 80654, | : | |
| | | |
| **And** | : | |
| | | |
| **KIMBERLY DOUGLAS** | : | |
| 120 Cinema Dr., Apt. 3320 | | |
| Hendersonville, Tennessee 37075 | : | |
| | | |
| Defendants. | : | |

## I.  VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1.     Comes now Plaintiff SunTerra Logistics LLC ("SunTerra"), by and through its undersigned counsel, Thompson Hine LLP, and avers for its Verified Complaint against Defendants Nick Monroe ("Monroe"), Kyle VanFrank ("VanFrank") and Kimberly Douglas ("Douglas") (collectively "Defendants") as follows:

## II.  PARTIES, JURISDICTION, AND VENUE

2.     Plaintiff SunTerra is an Ohio limited liability corporation with its principal place of business at 10250 Alliance Road Suite 209, Blue Ash, Ohio 45242.

3.     Defendant Monroe is an individual residing at 9644 Biddinger Ct., Harrison, Ohio 45030.

4.     Defendant Van Frank is an individual residing at 516 Wildcat Parkway, Wiggins, Colorado 80654.

5.     Defendant Douglas is an individual residing at 120 Cinema Dr., Apt. 3320, Hendersonville, Tennessee 37075.

6.     Subject matter jurisdiction is proper in this Court based upon 18 U.S.C. §1836.

7.     Personal jurisdiction and venue is also proper over Defendants because they performed services for SunTerra in Ohio, and breached their Non-Solicitation and Confidentiality Agreements (the "Agreements") (attached as Ex. A, B and C) with SunTerra which were entered into in Ohio, and which provides that any disputes arising under the Agreement shall be brought in state or federal Courts in Ohio unless the state of the employee's residence prohibits such jurisdiction. They further caused harm to SunTerra in Ohio, and misappropriated SunTerra's trade secrets housed in Ohio. Finally, jurisdiction and venue is proper over Monroe because he resides in Ohio.

## IV.  BACKGROUND

8.     SunTerra is a logistics company which primarily serves the produce industry. SunTerra has developed a unique understanding of the needs and demands of sophisticated shippers, who need to ensure that their perishable products are delivered promptly and in top condition to meet the needs of their customers. SunTerra contracts with companies who need to ship their products, and then retains the appropriate carriers to transport the products safely to their destinations. It is a small company, with just six current employees, and every one of its business relationships is vital to its continued existence.

2

9.      SunTerra exercises great care in protecting its trade secrets and guarding against disclosure of confidential business information. For example, access to its facility is restricted to employees and authorized, escorted visitors. SunTerra maintains a confidential, secure computer network by requiring all employees to authenticate their usage with a username and confidential password. SunTerra utilizes confidentiality agreements and non-solicitation agreements with employees, such Defendants, who are provided access to its trade secret information.

10.     SunTerra spends substantial resources, both human and financial, developing the technology, methods, marketing, customer sales, forecasting, and pricing and margin information for its services, which is proprietary, confidential, and/or trade secret information belonging to SunTerra.  This information provides it with a competitive advantage in the marketplace.

11.     Monroe and VanFrank were formerly employed by SunTerra as Business Development Managers.  Monroe was hired by SunTerra in May of 2022, and VanFrank was hired in June of 2022.

12.     Douglas was formerly employed by SunTerra as an Operations Manager.  She was hired in October of 2022.

13.     In December, 2022, and as a condition of their continued employment, Monroe, VanFrank and Douglas each entered into a Confidentiality and Non-Solicitation Agreement (Exhibits A, B and C) with SunTerra.

14.     Under the terms of the Agreement, the Defendants each agreed to be bound by a Confidentiality provision.  They promised that "during the term of Employee's employment with SunTerra and thereafter, Employee will use Confidential Information for the purpose of Employee's employment with SunTerra only, and will not, under any circumstances, use Confidential Information in any manner contrary to the best interests of, detrimental to, or in

competition with SunTerra or any of its affiliates." (Exhibits A, B and C Para. 2(b)). They acknowledged that SunTerra's Confidential Information included information related to customer lists, customer requirements, pricing arrangements, payment terms, price books, business and sales strategies, marketing plans, sales and distribution networks, quality control parameters, sources of supply, information relating to specially designed equipment and information relating to the developmental and experimental methods of SunTerra. (Exhibits A, B and C Para. 2(a)). This is confidential, proprietary and/or trade secret information belonging to SunTerra.

15.     Defendants also agreed to be bound by a Non-Solicitation provision, which states as follows:

> Employee agrees that during the term of Employee's employment, or continued employment with SunTerra, and for a period of two (2) years thereafter, Employee will not directly or indirectly, do, or cause to be done any of the following:
>
> (i)     Induce any person who is an employee, consultant, officer or agent of SunTerra or any of its affiliates to terminate his or her relationship with SunTerra or any of its affiliates; or
>
> (ii)    Contact, solicit or direct business of any then-customers or clients of SunTerra or any of its affiliates, either for Employee's benefit or for the benefit of any corporation, limited liability company, partnership, proprietorship, firm, association, or other business entity or advise any person or entity with respect thereto in an effort to compete with the business of SunTerra.

(Exhibit A, B, C, Para. 1).

16.     Defendants expressly recognized SunTerra's need for this non-solicitation provision and acknowledged that SunTerra was entitled to injunctive relief in the event of his breach of these obligations. (Exhibit A, Para. 1(c)). Indeed, they recognized that in the event of a breach of their covenants, the running of the restricted period would be automatically tolled. (Exhibit A, Para 1(b)).

4

17.    As Business Development Managers, Monroe and VanFrank were responsible for creating, building and cultivating relationships with shippers.  Some of the shippers they worked with were existing SunTerra customers. Other relationships were built on behalf of SunTerra, using prospecting software and other tools provided by SunTerra at substantial cost to SunTerra.

18.    VanFrank was SunTerra's primary point of contact for customers representing more than a quarter of SunTerra's $16 million business, and for the carriers SunTerra retained to support those customers. He was paid handsomely for this important role, with a base salary of $90,000 and a commission structure based upon his sales.  The customer base Monroe served for SunTerra represented nearly a million dollars in revenue.  He received an identical compensation structure.

19.    Douglas was hired exclusively to manage VanFrank's customer base, and work with the carriers supporting those customers. She was responsible for the operations side of VanFrank's book of business.

20.    The trio had access to a wide variety of SunTerra's confidential, proprietary and trade secret information. Their positions were not as simple as bidding on a load with a company with a shipment, and then hiring a carrier to transport it.  Instead, some companies post load information on a database accessible by logistics companies who post bids.  From there, the shipper further negotiates with the logistic companies.  In other instances, SunTerra has cultivated and developed a customer relationship, and has negotiated pricing terms individually. The defendants had this sensitive information on the rate structure and margin information for each of the SunTerra customers they served. SunTerra has also invested in predictive modeling tools, and uses those to develop the most cost effective routes for the shipments.  SunTerra has developed a knowledge base of what carriers serve certain lanes and which ones are most cost effective for certain products

and routes. The defendants had access to and full knowledge of this route information developed for SunTerra's customers. They also had knowledge of a wide variety of other trade secret information belonging to SunTerra including customer contacts, key carrier relationships, negotiated terms with preferred carriers, and quality control processes for the perishable shipments.

21.     Monroe was terminated by SunTerra on March 13, 2023, after he suspiciously and inexplicably stopped prospecting customers at his previous levels and at the level expected by SunTerra.

22.     Douglas resigned 13 days later, on March 26, 2023, claiming SunTerra was no longer a "good fit."

23.     VanFrank resigned on April 10, 2023. He emailed SunTerra's managing partner, Todd Cunningham ("Cunningham"), telling him that he was resigning with "a heavy heart" due to health issues with his fiancé, and because he was "not sure that the stress of this industry is good" for him at this juncture. For the three weeks prior to VanFrank's resignation, he also curiously did no business for SunTerra. In fact, he told Cunningham that he "can't ask you to continue to pay me with no book of business." He represented that he was leaving the industry and would be "working on a cyber security school" with funds from the Veteran's Administration.

24.     SunTerra has now learned that the Defendants, in fact, conspired to leave SunTerra as a package deal and deliver SunTerra's customers to a new employer, AmTrans Expedite/Fusion Transport ("AM Transport"). AM Transport is a direct competitor of SunTerra.

25.     SunTerra's investigation to date also reveals that the Defendants engaged in a pattern of nefarious conduct in the days preceding their departures from SunTerra, calculated to sabotage the company and mine its customer base.

26.     As outlined above, Douglas resigned from SunTerra on March 26, 2023.  SunTerra has just learned that the very next day – while VanFrank was still employed by SunTerra – he got an email from a SunTerra customer, asking if Douglas was joining him at AM Transport.  He responded "Kim is already with me.  I'll be here until Wednesday making sure all our deliveries are taken care of."

27.     SunTerra has just recovered an even more alarming email that VanFrank sent another SunTerra customer the following day, March 27, 2023.  In an email from his SunTerra email address, Van Frank reports to the customer: "I'm officially at my new place today so you can start sending loads over there now."  In an incredible show of audacity, VanFrank began working for AM Transport **while he was still working at SunTerra.**  He continued to work for both companies, siphoning SunTerra's business, until he finally resigned on April 10 "with a heavy heart."

28.     SunTerra has located other emails, sent inadvertently to one or more of Defendants' old SunTerra emails, demonstrating that Defendants are doing business with more of SunTerra's customers.  In one of those emails, Douglas even reprimands an established SunTerra carrier, "Someone is continuing to send [their emails] to our old employer, and this cause [sic] major issues for us."

29.     These emails demonstrate beyond a doubt that Defendants are actively soliciting and doing business with SunTerra customers.

30.     SunTerra has also learned that Defendants are soliciting current SunTerra employee Julie Nguyen, and have solicited former SunTerra employee Bryan Jimenez ("Jimenez").  Jimenez is VanFrank's future brother-in-law, and has refused to surrender his SunTerra computer following his resignation.

31.     Not only are Defendants attempting to gut SunTerra's workforce and harvest its clients using SunTerra's confidential, proprietary and/or trade secret information, but they have also taken active steps to thwart SunTerra's ability to contact its own customers and potential customers.  SunTerra has learned that Monroe deleted customer and prospect information from the SunTerra computer database prior to his departure.

32.     VanFrank and Douglas are also engaging in a clear scheme to hide the depths of their malicious plot, as they have refused to return their SunTerra laptops despite repeated demands that they do so.  The only logical conclusion is the laptops contain evidence of the SunTerra documents and information they have harvested.

33.     SunTerra had no recourse but to file this Action to enforce the terms of the Agreements.

34.     Additionally, it is impossible for Defendants to provide services for a direct competitor, in a comparable role, serving SunTerra's customers without necessarily using and disclosing the treasure trove of confidential and trade secret information entrusted to them by SunTerra.  Defendants possess a wealth of trade secret information relating to SunTerra's services, competitive attributes, sales and marketing strategy, sales, pricing and margin information, customers, carriers, route strategy and other knowledge that would allow a competitor to gain an unfair competitive advantage in the market, and SunTerra will suffer immediate and irreparable harm absent relief from this Court.

**COUNT I**
**Breach of Contract – Injunctive Relief**

35.     SunTerra incorporates the preceding paragraphs above by reference as if fully rewritten herein.

36. The Agreements are valid and enforceable contracts between SunTerra and each Defendant.

37. SunTerra fully performed all of the terms and conditions of Agreement.

38. Pursuant to the Agreement, Defendants covenanted and agreed that they would not engage in certain prohibited activities following the termination of his employment, including, among other things, soliciting or doing business with SunTerra customers or clients for a period of two years following the termination of their employment from SunTerra. Pursuant to the Agreement, Defendants also covenanted and agreed that they would not disclose or use any of SunTerra's confidential and trade secret information during or after their employment with SunTerra.

39. The confidentiality and non-solicitation provisions contained in the Agreements described above are reasonable and necessary to protect SunTerra's legitimate business interests including, but not limited to, its current and prospective customer relationships, its employment relationships, its methods ad processes, its goodwill, and its confidential, proprietary, and/or trade secret information.

40. Defendants breached the confidentiality and non-solicitation provisions contained in the Agreements by becoming employed by AM Transport, by soliciting another SunTerra employee customers, by soliciting SunTerra's customers and diverting their business from SunTerra, and by stealing, retaining, utilizing, and/or disclosing trade secret information belonging to SunTerra.

41. Unless Defendants are enjoined from further violating the provisions of the Agreements, SunTerra will be irreparably harmed by:

   a. The loss of its goodwill;

   b. Damage to its organizational stability;

    c.   Use and disclosure by Defendants of SunTerra's valuable confidential and trade secret information which is solely the property of SunTerra;

    d.   The loss of confidence and trust of customers, loss of goodwill, and loss of business reputation; and

    e.   Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

42.    SunTerra has no adequate remedy at law.

**COUNT II**
**Breach of Contract – Damages**

43.    SunTerra incorporates the preceding paragraphs above by reference as if fully rewritten herein.

44.    Defendants have violated and are continuing to violate the confidentiality and non-solicitation provisions of the Agreements described above.

45.    As a direct and proximate result of Defendants unlawful conduct, they are liable to SunTerra in an amount in excess of $75,000.00, the precise amount to be determined at trial.

**COUNT III**
**Misappropriation of Trade Secrets in Violation of**
**Ohio Rev. Code § 1333.61, *et seq.* – Injunctive Relief**

46.    SunTerra incorporates the preceding paragraphs above by reference as if fully rewritten herein.

47.    In connection with the development of its business, SunTerra has expended substantial time, labor, and money to research proprietary business methods, strategies, technologies, processes, routes, marketing plans and procedures, customers, carriers and other proprietary information regarding its customer preferences, contract information, pricing methods, margins and information, sales, sales volumes and strategies, and other confidential, proprietary and trade secret information.

48. SunTerra's trade secret information derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use. SunTerra has taken substantial measures and exercised due diligence to prevent its business-related documents and information from becoming available to persons other than those selected by it to have access to these documents and this information in order to further its business.

49. Defendants were provided access to trade secret information in their roles at SunTerra including, but not limited to, information regarding proprietary business methods, strategies, technologies, routes, products, marketing plans and procedures, customers, carriers, and other proprietary information regarding its customer preferences, contract information, pricing methods, margins and information, bids, sales, products, sales volumes and strategies, purchasing histories, and other confidential and proprietary information, and other trade secret information.

50. Defendants have used, or inevitably will use, this trade secret information in performing their duties for AM Transport and competing unfairly with SunTerra.

51. SunTerra has at all times had a protectable business in its trade secret information and has taken reasonable steps to protect the secrecy of this information.

52. Defendants have misappropriated SunTerra's trade secrets knowingly, willfully, maliciously, intentionally, and in bad faith.

53. The misappropriation of trade secrets has and will proximately cause substantial damage to SunTerra including, but not limited to, loss of goodwill, unjust enrichment, or a reasonable royalty, and if transferred to AM Transport or any other competitor, potential lost profits, potential lost revenue, and future loss of the same amount to be determined at trial.

54.     Unless Defendants are preliminarily and permanently enjoined from misusing, converting, disclosing, and misappropriating SunTerra proprietary and trade secret information, SunTerra will suffer immediate and irreparable injury, loss, or damage for which there is no adequate remedy at law.

55.     SunTerra is entitled to preliminary and permanent injunctions against the use, possession, transfer, duplication, and disclosure by Defendants of such proprietary and trade secret information, and against any future development or activities that would or could make use of such proprietary and trade secret information.

56.     Unless Defendants are enjoined from using and disclosing SunTerra's trade secret information, and from unfairly competing against it, SunTerra will be irreparably harmed by:

     f.   The loss of its goodwill;

     g.   Damage to its organizational stability;

     h.   Use and disclosure by Defendants of SunTerra's valuable confidential and trade secret information which is solely the property of SunTerra;

     i.   The loss of confidence and trust of customers, loss of goodwill, and loss of business reputation; and

     j.   Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

57.     SunTerra has no adequate remedy at law.

**COUNT IV**
**Misappropriation of Trade Secrets in Violation of**
**Ohio Rev. Code § 1333.61, *et seq.* – Damages**

58.     SunTerra incorporates the preceding paragraphs above by reference as if fully rewritten herein.

59.     In connection with the development of its business, SunTerra has expended substantial time, labor, and money to research proprietary business methods, strategies,

technologies, processes, products, marketing plans and procedures, customers, carriers and other proprietary information regarding its customer preferences, contract information, pricing methods, margins and information, sales, sales volumes and strategies, carriers, and other confidential, proprietary and trade secret information.

60. SunTerra's trade secret information derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use. SunTerra has taken substantial measures and exercised due diligence to prevent its business-related documents and information from becoming available to persons other than those selected by it to have access to these documents and this information in order to further its business.

61. As a direct and proximate result of Defendant's unlawful conduct, they are liable to SunTerra in an amount in excess of $75,000.00, the precise amount to be determined at trial.

62. Defendants misappropriated SunTerra's trade secrets knowingly, willfully, maliciously, intentionally, and in bad faith as to warrant the imposition of punitive damages and attorneys' fees in an amount to be determined at trial.

**COUNT V**
**Misappropriation of Trade Secrets – Injunctive**
**Relief under 18 U.S.C. § 1836,** *et seq.*

63. SunTerra incorporates the preceding paragraphs above by reference as if fully rewritten herein.

64. Pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, this Court may act in equity to enjoin threatened misappropriations of trade secrets.

65. In connection with the development of its business, SunTerra has expended substantial time, labor, and money to research proprietary business methods, strategies,

technologies, processes, products, marketing plans and procedures, customers, carriers and other proprietary information regarding its customer preferences, contract information, pricing methods, margins and information, sales, sales volumes and strategies, suppliers, and other confidential and proprietary information.

66.     SunTerra's trade secret information derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use. SunTerra has taken substantial measures and exercised due diligence to prevent its business-related documents and information from becoming available to persons other than those selected by it to have access to these documents and this information in order to further its business.

67.     Defendants were provided access to trade secret information in their roles at SunTerra including, but not limited to, information regarding proprietary business methods, strategies, technologies, products, marketing plans and procedures, customers, suppliers and other proprietary information regarding its customer preferences, contract information, pricing methods, margins and information, bids, sales, products, sales volumes and strategies, purchasing histories, and other confidential and proprietary information, and other trade secret information.

68.     Defendants have used, or inevitably will use, this trade secret information in performing their duties for AM Transport and competing unfairly with Sunterra.

69.     SunTerra has at all times had a protectable business in its trade secret information and has taken reasonable steps to protect the secrecy of this information.

70.     Defendants have misappropriated SunTerra's trade secrets knowingly, willfully, maliciously, intentionally, and in bad faith.

71.     The misappropriation of trade secrets has and will proximately cause substantial damage to SunTerra including, but not limited to, loss of goodwill, unjust enrichment, or a reasonable royalty, and if transferred to AM Transport or any other competitor, potential lost profits, potential lost revenue, and future loss of the same amount to be determined at trial.

72.     Unless Defendants are preliminarily and permanently enjoined from misusing, converting, disclosing, and misappropriating SunTerra proprietary and trade secret information, SunTerra will suffer immediate and irreparable injury, loss, or damage for which there is no adequate remedy at law.

73.     SunTerra is entitled to preliminary and permanent injunctions against the use, possession, transfer, duplication, and disclosure by Defendants of such proprietary and trade secret information, and against any future development or activities that would or could make use of such proprietary and trade secret information.

74.     Unless Defendants are enjoined from using and disclosing SunTerra's trade secret information, and from unfairly competing against it, SunTerra will be irreparably harmed by:

    a.  The loss of its goodwill;

    b.  Damage to its organizational stability;

    c.  Use and disclosure by Defendants of SunTerra's valuable confidential and trade secret information which is solely the property of SunTerra;

    d.  The loss of confidence and trust of customers, loss of goodwill, and loss of business reputation; and

    e.  Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

75.     SunTerra has no adequate remedy at law.

**<u>COUNT VI</u>**
**Misappropriation of Trade Secrets – Damages**
**under 18 U.S.C. § 1836, *et seq.***

76.     SunTerra incorporates the preceding paragraphs above by reference as if fully rewritten herein.

77.     Defendants have violated 18 U.S.C. §1836, *et seq.* by misappropriating confidential, proprietary, and trade secret information belonging to SunTerra.

78.     As a direct and proximate result of Defendants' unlawful conduct, he is liable to SunTerra in an amount in excess of $75,000.00, the precise amount to be determined at trial.

79.     Defendants misappropriated or threatens to misappropriate SunTerra's trade secrets knowingly, willfully, maliciously, intentionally, and in bad faith as to warrant the imposition of punitive damages and attorneys' fees in an amount to be determined at trial.

<u>COUNT VII</u>
**Tortious Interference with Business Relationships**

80.     SunTerra incorporates the preceding paragraphs above by reference as if fully rewritten herein.

81.     SunTerra has long standing relationships with its customers, and expected those relationships to continue for many more years.

82.     Defendants were aware of these long standing relationships and the information required to service them.  Defendants have intentionally solicited and compelled SunTerra customers, to discontinue their business relationships with SunTerra and divert their business to AM Transport.

83.     Defendants were not privileged to do so.

84.     Unless Defendants are enjoined from further tortiously interfering with SunTerra's business relationships with its customers, SunTerra will be harmed by:

(a)      loss of its goodwill;

(b)      damage to its organizational stability;

16

(c)     use and disclosure by Defendants of SunTerra's valuable, confidential and trade secret information which is solely the property of SunTerra;

(d)     the loss of confidence and trust of SunTerra's customers and loss of business reputation; and

(e)     present economic loss which is unascertainable at this time and future economic loss, which is presently incalculable.

85.     SunTerra has no adequate remedy at law.

86.     Therefore, SunTerra is entitled to injunctive relief against further interference with its business relationships with its customers.

87.     In addition, Defendants tortious interference with SunTerra's business relationships has and will proximately cause substantial damage to SunTerra in an amount to be determined at trial.

88.     Defendants have tortiously interfered with SunTerra's business relationships with its customers knowing, willingly, maliciously, intentionally, and in bad faith as to warrant the imposition of enhanced compensatory damages, punitive damages and attorney's fees in an amount to be determined at trial.

## COUNT VIII
### Conversion – Damages
### (Douglas and Van Frank)

89.     SunTerra incorporates the preceding paragraphs above by reference as if fully rewritten herein.

90.     Douglas and VanFrank have exercised dominion and control over SunTerra's property including a laptop computer.

91.     SunTerra has ownership and the right to possession of its property that Douglas and VanFrank converted.

92.     This property belongs to SunTerra and neither Douglas nor VanFrank has a lawful right to retain it.

93.     Douglas and VanFrank's actions were intentional, malicious, reckless, fraudulent, and/or grossly negligent, and as a result, SunTerra is entitled to punitive damages in addition to all attorneys' fees and costs that they incur as part of this lawsuit as well as prejudgment and post-judgment interest.

**WHEREFORE**, SunTerra respectfully requests that this Court:

A.     With Respect to Counts I, III, and V and VII:

i.     Enter a temporary, preliminary, and permanent injunction order enjoining Defendants, as well as all persons acting in concert with them, from directly or indirectly using, disclosing, copying, or transmitting SunTerra's confidential or trade secret information for any purpose (including, without limitation, engaging in competition with SunTerra, at AM Transport or otherwise, or soliciting SunTerra's customers, vendors, consultants, suppliers or employees);

ii.     Enter a temporary, preliminary, and permanent injunction order requiring Defendants to abide by the terms of the signed Agreements described above and immediately enjoining and restraining Defendants, and all persons acting in concert with them, from directly or indirectly engaging in competition with SunTerra, including, but not limited to, enjoining Defendants from continuing to provide any services to AM Transport and from doing business with or soliciting any current or former SunTerra customers, carriers, suppliers or employees;

iii.     Require Defendants, as well as all persons acting in concert with them, to return to SunTerra within twenty-four (24) hours of the Court's Order all SunTerra

18

property, including computers, and all originals, copies, or other reproductions in any form whatsoever, of any record or document containing, in whole or in part, any confidential information belonging to SunTerra and any other property belonging to SunTerra; and

      iv.      Order that Defendants, and all persons acting in concert with them, refrain from disparaging SunTerra or its officers, executives or managers; and

      v.      Require that Defendants preserve, not tamper with, or modify in any way, the hard drive(s) of their personal computer(s) or any other computer(s) they have used in the last year, and produce the hard drive(s) of their personal computer(s) or any other computer(s) they have used in the last year, and produce all USB devices and thumb drives used since January 1, 2023 to SunTerra within twenty-four (24) hours of the Court's Order;

B.      With respect to Count II, award SunTerra actual damages incurred as a result of Defendants' breaches of the Agreements;

C.      With respect to Counts IV, VI and VII, award SunTerra actual damages incurred as a result of Defedants' misappropriation of SunTerra's trade secrets, as well as punitive damages;

D.      With respect to Count VIII award SunTerra actual damages incurred as a result of Douglas and VanFrank's conversion of SunTerra's property, as well as punitive damages.

D.      With respect to all Counts, award SunTerra all costs and expenses associated with this action, including its reasonable attorneys' fees, as well as pre- and post-judgment interest; and

E.      Grant SunTerra such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby requests a trial by jury with the maximum number of jurors permitted by law on all claims so triable.

DATED: April 26, 2023                    Respectfully submitted,

 /s/  Deborah S. Brenneman
Deborah S. Brenneman (0062113)
Debbie.Brenneman@ThompsonHine.com
**THOMPSON HINE LLP**
10050 Innovation Drive, Suite 400
Dayton, Ohio  45342
Phone: (513) 352-6638; Fax: (513) 241-4771

Bret W. Vetter (0099199)
Bret.Vetter@ThompsonHine.com
**THOMPSON HINE LLP**
312 Walnut Street, Suite 2000
Cincinnati, Ohio  45202
Phone:  (513) 352-6502; Fax:  (513) 241-4771

*Trial Attorneys for Plaintiff*
*SunTerra Logistics LLC*

## **PRECIPE TO THE CLERK**

Please serve a copy of the foregoing Verified Complaint for Damages and Injunctive Relief on all of the Defendants at the addresses shown on the first page of this Complaint.

                                                   /s/  *Deborah S. Brenneman*
                                                   Deborah S. Brenneman

## **VERIFICATION**

STATE OF _____ )
                                          ) SS:
COUNTY OF _____ )

    I, __Todd Cunningham_____, on behalf of SUNTERRA LOGISTICS LLC, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DocuSigned by:

*Todd Cunningham*

41344C30DEAF44A...

Executed by __Todd Cunningham_____ on this __25th__ day of April, 2023.